STATE of Missouri, Respondent,

v.

Aaron MILNER, Appellant.

No. 57122.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 4, 1990.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for appellant.

Henry B. Robertson, Melinda Kay Pendergraph, Michael L. Lyons, St. Louis, Susan L. Hogan, Columbia, for respondent.

CRIST, Judge.

Defendant Aaron Milner appeals a conviction for one count of attempted robbery in the second degree, for which he was sentenced as a prior and persistent offender to fifteen years' imprisonment. We affirm.

Defendant asserts on appeal that the trial court erred in admitting alleged hearsay statements made by a neighbor at the crime scene. The victim's nine-year-old son ran to the neighbor for help, telling her a man was raping his mother and had a gun. In response, the neighbor contacted the police.

We view the evidence in a light most favorable to the verdict. On July 30, 1988, the victim was returning home from a wake. She was walking with her son at the edge of Fairgrounds Park in north St. Louis when defendant suddenly appeared and asked victim for a cigarette. Victim refused and kept walking. Defendant asked again. Victim repeated that she did not have a cigarette. Defendant then attacked her, beating her and pulling off her clothes, saying "give me your money bitch.... I'm going to drag you up under this tree and I'm going to kill you bitch."

Victim's nine-year-old son jumped on defendant but was shoved away. Victim cried out to her son to go get help. The son ran across the street to the home of Catherine Pruitt for help. He told her there was a man in the park trying to rape his mother. Pruitt started toward the park, but the son told her that the man had a gun. Pruitt then flagged down a police officer and told him that a woman was being beaten in the park. The officer drove to the location and saw a man he identified as defendant beating an unclothed woman. Defendant fled when he saw the patrol car. The officer gave chase, never losing sight of the defendant. When defendant left the park and crossed Grand Avenue, he was subdued by a group of citizens. Defendant did not testify and put on no defense.

■ On direct examination, Ms. Pruitt testified:

Q. (By Mr. Draper) The little boy came across the street and?

A. Said it wasn't a dog or nothing. It was his mother and the man was trying to rape his mother.

Q. What happened next?

A. Okay. Then we attempted to go over off the porch and he said he had a gun so we stopped at that time and then we saw an officer coming down the street which was coming towards—

MR. BUTLER: Objection, Your Honor. May we approach the bench? [appellant's objection ensued]

* * * * * *

Q. (By Mr. Draper) All right. After the boy spoke to you, what did you do next?

A. We started across the street and *we seen the policeman* and someone else and *we flagged him down.* (Emphasis added.)

Ms. Pruitt's statements were not prejudicially erroneous for two reasons.

■ First, the evidence was not offered as proof of the matter asserted in the statement. Instead, it was offered to explain Ms. Pruitt's subsequent conduct in flagging down a police officer. Hearsay evidence is "testimony in court, or written

evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter." *State v. Singleton,* 660 S.W.2d 13, 18–19[12] (Mo.App.1983), *quoting* McCormick on Evidence, Section 246 (1982). Thus, if an out-of-court statement is not offered as proof of the matter asserted in the statement the statement is admissible. *State v. Mallett,* 732 S.W.2d 527, 536 (Mo. banc 1987), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). In this case, the statement supplied relevant background and provided continuity to Ms. Pruitt's actions. *State v. Brooks,* 618 S.W.2d 22, 25[6, 7] (Mo. banc 1981).

■ Additionally, the statement was admissible under the excited utterance exception to the hearsay rule. Declarations are admissible under this exception when made as a spontaneous reaction to a startling event. *State v. Boyland,* 728 S.W.2d 583, 585[1, 2] (Mo.App.1987). The test for admissibility of an excited utterance is "not the time nor place of the utterance but rather the circumstances surrounding the utterance indicating its trustworthiness." *Id.* Thus, if the excitement persists a declaration may fall within the excited utterance exception even though made several minutes after the startling event. *State v. Williams,* 673 S.W.2d 32, 35 n. 4 (Mo. banc 1984). Here a nine-year-old boy had observed someone attacking his mother, tried to help her, and was unable to stop the attack. The boy was under a great deal of stress when he ran to Ms. Pruitt for help. Under those circumstances, the statement was sufficiently reliable and spontaneous to be considered by the trier of fact.

■ It is also difficult to understand how defendant was prejudiced here. Frequently, where the declaration of another party is excluded from evidence when offered by a witness to explain his subsequent conduct, it is excluded because the defendant is deemed "unduly prejudiced" because the hearsay testimony was heavily relied on by the state to identify the defendant as the person who committed the

crime. *See State v. Kirkland,* 471 S.W.2d 191 (Mo.1971). In this case, however, the boy's declaration does not identify the defendant in any way. Defendant claims that the testimony raises "the spectre of rape at gunpoint." However, the strong evidence of defendant's guilt does not render this one line of unrepeated testimony prejudicial. Point denied.

In his second point on appeal, defendant claims the trial court erred in allowing the prosecutor to ask a venire person to cite a good experience she had with a police officer. Defendant argues that he was prejudiced by the venire person's response because every other venire person was therefore predisposed in favor of the State's only identification witness, a police officer. The relevant portion of the exchange which defendant claims poisoned the panel is as follows:

> MR. DRAPER: Okay. All right. Have you ever had any good experience with police officers?
> VENIREMAN INGRAM: Oh, yes.
> MR. DRAPER: Can you cite one?
> MR. BUTLER: Objection, Your Honor, to anything more than she had good experiences. The citing of an example itself is irrelevant to the matter before us. Your Honor.
> THE COURT: I'll overrule the objection at this point.
> MR. DRAPER: Can you cite one?
> VENIREMAN INGRAM: The police wanted to arrest or give a ticket and it was proven that the person was wrong and he agreed that he was wrong and the policeman—I know he was wrong and he knew he was wrong.

This contention merits little, if any, response. The trial court is in the best position to determine the effect of exchanges during voir dire on the jury panel. *State v. Cooper,* 719 S.W.2d 20, 22[2] (Mo.App. 1986). Defendant has not shown how or why he was prejudiced. Further, immediately prior to the exchange in question, the venire person made negative comments about policemen:

> MR. DRAPER: Was there ever an incident that you observed where you felt that the police officers were using excessive force, they got carried away?
> VENIREMAN INGRAM: Yes, I've seen that....
> MR. DRAPER: Okay. Does that cause you to feel like well, police officers are pretty brutal people and they usually do get carried away?
> VENIREMAN INGRAM: Only some.

Given these remarks, it is unlikely that the jury came away predisposed to believe the police officer's testimony.

Judgment affirmed.

GARY M. GAERTNER, P.J., and HAMILTON, J., concur.