STATE of Missouri, Respondent,

v.

Joseph M. JONES, Appellant.

Nos. WD 45466, WD 46742.

Missouri Court of Appeals,
Western District.

Aug. 17, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1993.

Application to Transfer Denied
Nov. 23, 1993.

Robert E. Steele, Jr., Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and SPINDEN and SMART, JJ.

PER CURIAM.

Joseph M. Jones appeals his convictions for kidnapping in violation of § 565.110, RSMo 1986, and for first degree trespassing in violation of § 569.140, RSMo 1986. Jones also appeals the denial of his Rule 29.15 motion. Appellant received a sentence of ten years imprisonment for kidnapping and six months for trespassing. The sentences were

ordered to run concurrently. The judgments are affirmed.

Veronica Woodson testified at trial that she and Mr. Jones had lived together, along with her three young children, for a total of ten months between September, 1989 and June, 1990. On June 15, 1990, Ms. Woodson had Mr. Jones removed from her apartment by the police after he threatened her with a .38 automatic pistol. On June 17, Ms. Woodson applied to the Circuit Court for a domestic protective order against Mr. Jones to prevent him from having any contact with her.

On June 21, however, Mr. Jones drove up beside Ms. Woodson while she was walking from her home to catch a bus. Ms. Woodson testified that he grabbed her by the wrists, placed her in the car he was driving, and locked all the doors. He then drove at a high rate of speed to his sister's home. Mr. Jones unlocked the doors and, according to the testimony, told Ms. Woodson that he was going to kill her and her children. She jumped out of the car and ran down the street yelling for help. Mr. Jones pursued her and caught her at 36th and Main where a struggle ensued. An unidentified man in a white station wagon stopped and offered Ms. Woodson assistance. He drove her from the scene and left her with Officer David Ptomey. Officer Ptomey noticed that Ms. Woodson was distressed and crying, her clothes and hair were disheveled, and she was missing a shoe.

On June 25, the Circuit Court granted Ms. Woodson's petition for a domestic protective order. On June 26, however, according to the evidence, Ramondo Woodson, Ms. Woodson's son, saw Mr. Jones enter Ms. Woodson's apartment while she was at work and carry out a black object. The size of the object was consistent with that of a video cassette recorder. The family's VCR was later determined to be missing.

Appellant Jones was charged with one count of kidnapping, one count of burglary in the second degree, and one count of stealing over $150, in violation of § 565.110, § 569.-170, and § 570.030, RSMo 1986, respectively. At the close of state's evidence, the Circuit Court sustained defendant's motion for judg-ment of acquittal as to the stealing charge, but overruled the motion as to the kidnap-ping and burglary charges. Defendant pre-sented stipulated testimony concerning the location of the car which Ramondo Woodson saw appellant Jones drive on June 26. The stipulated testimony established that the car in question was at the police tow lot on June 26. Thus, the car could not have been driven by Defendant Jones on that same day, as asserted by Ramondo Woodson. Defendant also presented the testimony of Brenda Jones, appellant's sister, who testified she observed Ms. Woodson voluntarily get into the car with Mr. Jones and that she observed them drive off without incident. The jury found defendant guilty of kidnapping and of first degree trespassing, § 569.140, RSMo 1986, which had been submitted as a lesser included offense of burglary. Mr. Jones ap-peals from these convictions and the denial of his 29.15 motion.

*Improper Joinder of Charges*

■ Appellant argues that the trial court committed prejudicial error in allowing the state to join the charges of kidnapping, bur-glary, and stealing. Appellant contends that the three charges were not of similar charac-ter nor part of a common scheme and, more-over, that he was prejudiced by the joining of the charges because it allowed proof of the commission of unrelated crimes to be used against him.

■ Liberal joinder of criminal offenses is favored in order to achieve judicial econo-my. *State v. Olds*, 831 S.W.2d 713, 718 (Mo. App.1992). It is important, however, to avoid prejudice against the defendant which can result from the joinder of charges. *Id.* Two distinct points arise in appellate review when an appellant asserts that the trial court should have severed charges and ordered separate trials. *State v. Sims*, 764 S.W.2d 692, 696 (Mo.App.1988). First, the court must determine whether the offenses were properly joined. *Id.* Then, the appellate court must determine if the trial court should have ordered severance even though the join-der was proper in view of the possible preju-dice against the defendant. *Id.* The propri-

ety of joinder is determined as a matter of law and, thus, the trial court's decision in this regard is not entitled to deference. *State v. Eiland*, 809 S.W.2d 169, 171 (Mo.App.1991). Once joinder is determined to be proper, however, the decision whether to order severance of offenses to mitigate a clear prejudice is discretionary. Reversal by an appellate court on that issue requires an abuse of discretion by the trial court. *Olds*, 831 S.W.2d at 718; *Sims*, 764 S.W.2d at 696.

Missouri Supreme Court Rule 23.05 provides the following regarding the propriety of joinder:

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

In the present case, the state argued that the kidnapping incident on June 21 and the burglary/stealing incident on June 26 were properly joined because they were part of the defendant's single continuing motive to harass and terrorize Ms. Woodson. In *State v. McCrary*, 621 S.W.2d 266, 271 (Mo. banc 1981), the court ruled that "the essential test in determining whether a common scheme or plan exists, in a case involving a single defendant acting alone, is the requirement that all the offenses charged must be 'products of a single or continuing motive'."

Appellant argues that the *McCrary* holding should be interpreted to allow the finding of a common scheme only when all the offenses to be combined result from a single motive to commit a *criminal* offense. Appellant contends that the kidnapping could not properly be joined with the burglary or stealing charges because "terrorizing" is not a criminal offense and, therefore, could not be the single motive for a common scheme. The court in *McCrary*, however, used harassment and terrorizing as the single motive to link several separate charges together into a common scheme. *Id.* In *McCrary*, the defendant was charged with assault with intent to kill concerning a shooting on November 13, 1978, first degree arson concerning a fire-

bombing on March 8, 1979, and carrying a concealed weapon concerning a stop by a police officer outside the victim's home on March 12, 1979. 621 S.W.2d at 268. Clearly, *McCrary* did not intend the single motive required for a common scheme to exclude "non-criminal" motives like harassment.

In the present case, the trial court's determination that the defendant's acts on June 21 and 26 were products of a single motive to harass Ms. Woodson was not erroneous. Appellant however, argues only that we should presume prejudice, and fails to articulate a showing of prejudice to the defendant resulting from the joinder. Because the charges could be properly joined, there is no presumption of prejudice. Appellant does not show an abuse of discretion. The trial court did not err in joining the kidnapping charge with the burglary and stealing charges. This point is denied.

### Hearsay Testimony

Appellant next argues that the trial court committed prejudicial error by admitting Officer Ptomey's hearsay testimony. Hearsay evidence is "second hand" testimony about a statement made out of court offered to show the truth of the matters asserted, thus denying an opportunity for cross examination to determine the credibility of the out-of-court asserter. *State v. Milner*, 795 S.W.2d 621, 623 (Mo.App.1990). Thus, if the out-of-court statement is not offered as proof of the matter asserted but, instead, is offered to provide relevant background, then the statement is not hearsay and is admissible. *Id.* Further, even if hearsay testimony is erroneously admitted into evidence, the testimony must still be prejudicial to amount to reversible error. *Id.* When the state does not rely on the hearsay testimony to prove its case, the error of allowing the hearsay evidence is generally not prejudicial. *Id.* at 623–24.

The testimony in question in the present case occurred when Officer Ptomey testified at trial as to what happened after his conversation with Ms. Woodson and the man driving the white station wagon:

Q: Once he talked to you, what did you do?

A: Well, I heard a call come out over the air about a disturbance.

MR. HIGGINBOTHAM: Object to the hearsay, Judge.

MS. HILL: This goes to the officer's subsequent conduct. He's explaining what he did based on what he heard.

THE COURT: Is that the purpose for which it's being offered?

MS. HILL: Yes, it is Your Honor.

THE COURT: You want me to instruct?

MR. HIGGINBOTHAM: Judge, it's hearsay.

THE COURT: Want me to instruct the jury on the basis for which it's being received?

MR. HIGGINBOTHAM: Yes, please, Judge.

THE COURT: All right. It's being received strictly for the purpose of explaining the officer's subsequent conduct, not for the truth of the matter.

Officer Ptomey then testified that the announcement on the police radio had been about a man beating up a woman. The statement was not offered to prove that a man was in truth beating up a woman but, instead, was offered to explain Officer Ptomey's actions in response to the radio message. The Court specifically instructed the jury that the statement should not be considered proof of Ms. Woodson's struggle against defendant.

Even if the statement had been inadmissible hearsay, however, the error of admitting the statement would have been harmless. The state did not rely on the radio message to establish that Ms. Woodson had struggled against defendant on the June 21 kidnapping incident. The state presented the direct testimony of Veronica Woodson that she struggled with the defendant. Her story was corroborated by the testimony of the officers who took her statement that she was hysterical and scared and that her clothes and hair were disheveled. The trial court, thus, did not commit prejudicial error by allowing Officer Ptomey to testify as to what caused his subsequent conduct. This point is denied.

*Sufficiency of the Evidence*

■ Appellant contends that the trial court committed prejudicial error by denying his motion for acquittal at the close of state's evidence and submitting the burglary charge to the jury because the state failed to produce sufficient evidence establishing that appellant entered the Woodson's home for the purpose of committing a crime. Appellant argues that because the trial court failed to find sufficient evidence for the underlying stealing charge upon which the burglary charge was based, the trial court could not have logically found sufficient evidence for the burglary charge itself.

■ Burglary in the second degree requires that a person knowingly unlawfully enter or remain in a building for the purpose of committing a crime. Section 569.170, RSMo 1986. To sustain the burglary conviction, the state must establish the intruder had a specific intent to commit a crime within the premises. *State v. Lewis*, 599 S.W.2d 94, 96–97 (Mo.App.1980). Consummation of the specific intent, however, is not essential to establishing that the intruder entered the building with the necessary intent to sustain the burglary charge. *State v. McBurnett*, 694 S.W.2d 769, 773 (Mo.App.1985).

Appellant contends that the state failed to establish beyond a reasonable doubt that he had the intent to commit a crime when he entered the Woodson home. The jury apparently agreed with him because they did not find him guilty of burglary, but rather found him guilty of the lesser included offense of trespassing which does not require the specific intent to commit another crime.

■ When determining whether the trial court erred in allowing the evidence to reach the jury after a defendant moved to acquit on the grounds of insufficient evidence, however, an appellate court does not examine the verdict of the jury or re-evaluate the evidence. *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc 1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Rather, the prosecution's evidence, together with all reasonable inferences to be drawn from the evidence, is viewed in a light most favorable to the state and all contrary

evidence and inferences are disregarded. *Id.* In reviewing a trial court's decision on a motion to acquit for lack of sufficient evidence, an appellate court must determine only whether there existed sufficient evidence from which reasonable persons could have found appellant guilty as charged. *Id.*

The prosecution in the present case presented the testimony of Ramondo Woodson to place appellant Jones at the Woodson house carrying away a "black thing." The prosecution further presented evidence that the Woodson family's VCR was missing from the home immediately following this incident. Taking the prosecution's evidence in the light most favorable to the state's case and drawing the logical inference from the evidence, a reasonable jury could have determined the evidence was sufficient to find that the defendant had the specific intent to commit a crime while in the Woodson home and, thus, was guilty of burglary. The jury could have found that Ramondo Woodson was mistaken about the car which defendant drove that day, but that Ramondo was not mistaken about the fact that Defendant Jones did enter Ms. Woodson's house at the time alleged.

The trial court, therefore, did not err in denying the defendant's motion for acquittal for insufficient evidence and allowing the burglary charge to be determined by the jury. This point is denied.

### Ineffective Assistance of Counsel

■ Finally, appellant contends that the motion court erred in denying defendant's Rule 29.15 motion for post conviction relief because defendant's counsel inadequately prepared for the cross examination of Ms. Veronica Woodson. Specifically, appellant asserts that his counsel's failure to take notes during Ms. Woodson's deposition or to write out questions for the cross examination of Ms. Woodson constituted ineffective assistance of counsel because inconsistencies in her deposition could have been used to impeach her testimony.

■ Appellate review of the denial of a Rule 29.15 motion is confined to the issue of whether the findings of fact and conclusions of law of the motion court are clearly errone-

ous. *State v. Anderson,* 785 S.W.2d 596, 600 (Mo.App.1990). The motion court's determination is clearly erroneous only if after reviewing the entire record, the appellate court has a definite and firm impression that a mistake has been made. *Id.*

■ To establish ineffective assistance of counsel, appellant must satisfy the *Strickland* two-prong test, showing (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and (2) that appellant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Review begins with the presumption that counsel is competent and movant has the "heavy burden" of proving counsel's ineffectiveness by a preponderance of the evidence. *Amrine v. State,* 785 S.W.2d 531, 534 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). Finally, appellant must show that it is probable that a different outcome could have resulted but for counsel's errors in order to show that he was prejudiced by such errors. *Sanders v. State,* 738 S.W.2d 856, 860–61 (Mo. banc 1987).

■ Ineffective assistance of counsel claims relating to "trial strategy" generally do not provide a basis for post-conviction relief. *Rainwater v. State,* 770 S.W.2d 368, 370 (Mo.App.1989). Counsel is vested with wide latitude in defending his client and should use his best judgment in matters regarding trial strategy. *Stuckey v. State,* 756 S.W.2d 587, 593 (Mo.App.1988). Courts reviewing such claims should refrain from employing hindsight when reviewing counsel's conduct at trial. *State v. Lewis,* 785 S.W.2d 656, 660 (Mo.App.1990).

In the present case, appellant argues that his motion for relief based on ineffective assistance of counsel should have been granted because his counsel failed to impeach Ms. Woodson's testimony. Mr. Jones contends that his counsel's failure to impeach Ms. Woodson was due to counsel's inadequate preparation for cross examination because counsel did not write out specific questions or take notes from the deposition of the witness.

Generally, the presentation of witnesses by an attorney on behalf of his client is considered a matter of trial strategy, which is not a proper basis for an ineffective assistance of counsel claim. *Johnson v. State,* 776 S.W.2d 456, 458 (Mo.App.1989). To prevail on his claim, an appellant is required first to show that counsel's failure to present the impeachment evidence was outside the realm of trial strategy. *Terry v. State,* 770 S.W.2d 723, 724 (Mo.App.1989). Next, an appellant must establish that the evidence would have provided a viable defense. *State v. Vinson,* 800 S.W.2d 444, 448–49 (Mo. banc 1990).

Counsel's actions in this case fall within the realm of trial strategy. As the motion court found, counsel did make a thorough cross examination of Ms. Woodson. He took her deposition prior to trial and reviewed the deposition before cross examining the witness. Certainly, taking notes during a deposition and writing out specific questions would have been additional ways for counsel to prepare for a cross examination. However, counsel's efforts to prepare for Ms. Woodson's testimony were not outside the realm of trial strategy and cannot be considered so deficient as to amount to ineffective assistance.

Further, appellant has failed to show how additional preparation by his counsel would have necessarily allowed his counsel to impeach Ms. Woodson's testimony. Despite counsel's candid testimony at the Rule 29.15 hearing that he feels he would have been better able to impeach Ms. Woodson if he had taken the additional steps to prepare for his cross examination, there was no showing of any specific discrepancies between Ms. Woodson's deposition and her testimony that his counsel would have been prepared to exploit if counsel had taken notes during the deposition or written out specific questions in preparation of the cross examination. Consequently, appellant is asking this Court to speculate as to the existence of prejudice. This we may not do. *Sanders,* 738 S.W.2d at 860–61.

Therefore, the motion court's ruling on this point was not clearly erroneous and the appellant's argument for ineffective assistance of counsel is denied.

Judgment is affirmed.