STATE of Missouri, Plaintiff/Respondent,

v.

Gerald DAVENPORT,
Defendant/Appellant.

Gerald DAVENPORT, Movant,

v.

STATE of Missouri, Respondent.

Nos. 66505, 68533.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 7, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 17, 1996.

Barbara Hoppe, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Presiding Judge.

Defendant was convicted of two counts of selling a controlled substance, crack cocaine.

Defendant argues five points of error: (1) error by the trial court in admitting the seized drugs because the state failed to sufficiently trace the chain of custody; (2) error in permitting hearsay statements identifying defendant as the person who sold the drugs; (3) error in overruling defendant's objections to remarks in the state's closing argument which allegedly shifted the burden of proof to him; (4) error in conducting the voir dire; and (5) error in denying defendant's 29.15 motion. We affirm.

In December 1992, Officer David Williams (Williams), was working in the Audrain County area as an undercover agent for a task force assigned to investigate narcotics activity. On December 1, 1992, Williams met an informant and Michael Herbert (Herbert), Williams' control officer, in Mexico, Missouri. Informant and Williams traveled in informant's car through various housing projects on Trinity Street in Mexico, Missouri. Informant identified people the task force suspected of selling and possessing narcotics. Williams made three drug purchases that evening from two suspects, one being defendant.

Williams' first purchase was from a person identified as Sandy Nunnelly. The officer successfully purchased what was believed to be a controlled substance and placed the bag in his right front trouser pocket. Williams then encountered defendant sitting in a full size yellow van on Trinity Street. Williams got into defendant's van where the two discussed the purchase of crack cocaine. Defendant agreed to sell a rock of cocaine to Williams for twenty dollars. Defendant then produced a bag containing several pieces of what appeared to be crack cocaine. Defendant removed a piece and handed it to Williams in exchange for twenty dollars. Williams placed the substance in his left front trouser pocket. Williams then met up with Nunnelly again and made another purchase of crack cocaine. He placed this evidence in his right front jacket pocket.

Around 9:00 p.m. Williams met Herbert at Lakeview Park in Mexico, Missouri, and gave him the drugs he had purchased that evening, one at a time and in the same order

he had received them. The drug from defendant was placed in an evidence bag sealed and initialed by Herbert. Herbert recorded the case number and location of the buy (Mexico, Missouri) on the bag. Herbert also recorded the name Jerry Nickens on the bag. This was the name of the suspect given to Williams by informant. Later, the license plate on the van was checked and it revealed the van was registered to Gerald Davenport. Herbert placed that name on the bag as well.

On December 10, 1992, Williams returned to the housing project again accompanied by informant. Williams spotted defendant in the same van. Williams approached the van again and asked the occupant if he remembered him from the last buy on December 1, 1992. Defendant responded "yes." Williams again asked defendant if he had any drugs for sale and defendant said "yes." He invited Williams into the van, produced a bag of what appeared to be crack cocaine and sold Williams a piece for twenty dollars. Williams put this piece in a cellophane wrapper from a cigarette pack and placed it in his right trouser pocket.

Williams met Herbert at a vacant lot in Kingdom City around 1:00 a.m. and turned over the substance purchased from defendant. The substance was still inside the cellophane wrapper. Herbert placed the cellophane wrapper into an evidence bag, sealed it, initialed it and labeled it Gerald Davenport. Herbert took the substance to the evidence locker at the sheriff's department in Fulton. The evidence was later taken to the Highway Patrol Lab, tested and returned to the evidence locker.

Sid Popejoy, a chemist for the Missouri Highway Patrol, testified at trial that he performed the tests on the substances purchased from defendant and both were determined to be crack cocaine. He also testified that state's exhibits 1 and 2 were in the same condition at trial as they were after he examined and tested them.

Defendant did not present any evidence at trial and was found guilty of two counts of selling a controlled substance. Defendant filed a pro se motion alleging ineffective assistance of counsel pursuant to Rule 29.15. Counsel was appointed and an evidentiary hearing was held. The motions were denied. This appeal followed.

In point one, defendant argues the court abused its discretion in overruling defendant's objections to admitting the substances allegedly purchased from defendant (exhibits 1 and 2) because the state failed to sufficiently trace the chain of custody. We find no error. The sufficiency of the evidence establishing a valid chain of custody for a given exhibit is a matter addressed to the sound discretion of the trial court. *State v. Murray*, 630 S.W.2d 577, 581 (Mo. banc 1982). The chain of custody must provide reasonable assurance that the exhibit offered is the same evidence seized and is in substantially the same condition as when seized. *State v. Taylor*, 804 S.W.2d 59, 61 (Mo.App. W.D.1991). The chain of custody must also provide reasonable assurance the evidence seized has not been tampered with or substituted. *State v. Huff*, 789 S.W.2d 71, 78 (Mo.App. W.D.1990). The reasonable assurance standard does not require the exclusion of every possibility that the evidence has not been disturbed. *Id.*

The testimony on the chain of custody was sufficient to provide reasonable assurance the evidence admitted was the cocaine purchased from defendant and was in substantially the same condition as when seized. As to exhibit 1, Officer Williams testified that on the evening of December 1, 1992, he made three drug purchases and kept them separate. The evidence was delivered to his control officer, Herbert. Williams testified that he witnessed Herbert immediately bag the evidence, mark it with the name informant supplied as that of the seller, his initials, the date, the town where the purchase occurred and the time of the purchase. At trial, Williams was able to identify the evidence bag as the one marked on December 1, 1992. Herbert testified that he took the evidence purchased that night one at a time, marked and sealed the bags and took the three bags to the police evidence locker at the police station. He testified that the bag containing the purchase from defendant was then taken to the lab for testing. Herbert identified the evidence bag at trial. The police chemist further testified establishing the chain of cus-

tody. He stated the bag was brought to him sealed. It was opened and tested by him and the bag was resealed and returned to the police locker. These facts are more than sufficient to establish the chain of custody for exhibit 1, the drugs sold on December 1, 1992.

■ Defendant argues that at trial Williams could not identify the drug as the item received on December 1, 1992. Defendant misconstrues the objective of chain of custody evidence. As defendant himself aptly pointed out, if evidence can be identified at trial there is no need to establish chain of custody. *State v. Watts,* 813 S.W.2d 940, 944 (Mo.App. E.D.1991). The chain of custody is only necessary when evidence is not distinguishable as is the case where items such as drugs are seized. *Id.* The testimony clearly established the chain of custody of the drugs purchased from defendant in 1992. Therefore, it is irrelevant whether Williams could identify the rocks of cocaine admitted at trial.

The evidence offered to establish the chain of custody for exhibit 2 was also sufficient to establish reasonable assurance that the drugs purchased on December 10, 1992, were the drugs offered into evidence. The officers both testified to the hand to hand delivery from the purchaser, Williams, to the evidence bag marked and sealed by Herbert. Herbert testified the evidence was taken to the police locker then to the lab and back to the police locker.          .

■ Defendant argues Herbert did not record the time of the sale and marked an incorrect transaction number on the evidence bag containing exhibit 2. Therefore, defendant contends it was inadmissible. We disagree. There is no requirement that this information be listed on the evidence bag. The bag contained defendant's name and the date of the transaction and the testimony was sufficient to establish that the drug offered into evidence was the evidence purchased from defendant on December 10, 1992. Defendant's point one is denied.

■ In point two, defendant argues the trial court erred in allowing Officer Williams to testify to inadmissible hearsay statements made by informant. We disagree. A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted. *State v. Parker,* 886 S.W.2d 908, 925 (Mo. banc 1994). If an out-of-court statement is not offered to prove the truth of the matter asserted but instead is offered to prove relevant background, then the statement is not inadmissible hearsay. *State v. Jones,* 863 S.W.2d 353, 357 (Mo.App. W.D. 1993). Statements made by an out-of-court declarant that explain subsequent conduct are admissible as supplying relevant background and continuity. *State v. Dunn,* 817 S.W.2d 241, 243 (Mo. banc 1991).

■ Defendant complains of two out-of-court statements offered by Williams but neither of them was offered for the truth of the matter asserted and, therefore, we find no error. First, Williams testified that informant pointed defendant out to him. The statement was offered to show why Williams approached defendant to purchase drugs. Williams also testified that informant identified defendant (incorrectly) as Jerry Nickens. This statement was offered to explain why the name Jerry Nickens was first written on the evidence bag by Herbert. Both statements were offered to explain subsequent conduct, not for the truth of the matter asserted. Therefore, they were not hearsay. Defendant's point two is denied.

■ In point three, defendant argues the trial court erred in overruling his objections to remarks in the state's closing argument which defendant alleges shifted the burden of proof to him. We find no error. Trial courts have wide discretion in controlling counsel's closing arguments. *State v. Vitale,* 801 S.W.2d 451, 457 (Mo.App.E.D. 1990). Unless the trial court clearly abuses its discretion, its ruling should not be disturbed on appeal because the trial court is in the best position to assess the prejudicial effect of a prosecutor's statements. *Id.*

■ The first excerpt of the state's closing argument to which defendant objected reads as follows:

[The state] There's ample evidence that this man is the same man, and you can reasonably believe that if this man sitting right there, Jerry Nickens, was not Gerald

Davenport, if they were not the same, they would have paraded numerous witnesses on the stand to say otherwise. You can reasonably believe, because if the defense had evidence to present, any defendant in any criminal case, if he had evidence to present to exonerate himself—

[Objection by defense counsel] Your honor, I am going to object. The burden of proof lies on the state to regarding [sic] these causes. Counsel for the state is indicating and suggesting that we have a duty to present evidence.

[The court] overruled.

[The state] I'm not saying they have any such duty at all. I'm just saying that it's just very reasonable to believe that if this man seated right here wasn't Gerald Davenport and was different than the one that David Williams saw and that there was another Gerald Davenport running around out there, that they obviously would bring that in. That's reasonable. And you can believe reasonably that since they didn't do that, there is no confusion on the name of the defendant, that he is commonly known by both names.

This excerpt is a comment about defendant's failure to present evidence and is permissible. While it is improper, as a violation of defendant's constitutional rights, to comment on the defendant's failure to testify, it is not improper for the prosecution to comment on the defendant's failure to offer evidence on his behalf. *State v. Wynn*, 666 S.W.2d 862, 866 (Mo.App.1984). The state's comments, quoted above, did not refer to defendant's failure to testify. The state referred to "a parade of other witnesses" which contemplates witnesses other than defendant to testify that defendant and Jerry Nickens were different people. It merely pointed out that there was no evidence introduced to refute Officer Williams' identification of defendant as the person who sold the drugs. Therefore, they were not objectionable.

■ Defendant also claims error by the trial court in denying his objection to the state's closing argument offered in rebuttal to his closing argument. Defendant argued in his closing statement as follows:

[Defense counsel] Ladies and Gentlemen, the state talks about Alpha Durham. Well who is this Alpha Durham? If he's so important that he can identify, then why isn't he here? He obviously is not. The state is saying, "Well, the defense could have brought evidence." Well, ladies and gentlemen, we're saying that the state should have brought Alpha. If Alpha is this great person who can identify, why isn't he here? He's not here. You've not heard any testimony from anyone who can specifically state that my client was the individual. You've heard hearsay evidence saying that that's the individual. We don't know anything about Alpha. We don't know if Alpha knows my client. We don't know if Alpha has a grudge against my client. Alpha's not here to answer the questions. Alpha's not here to testify to you, to answer questions that we might have as far as his relationship, even if he knows my client. There's been no evidence to that effect. The state seems to be hanging its hat on a rather flimsy limb.

.    .    .    .    .

The second element is if, in fact, it was a controlled substance. We're looking at the issue of delivery and whether or not it was a controlled substance. Ladies and gentlemen, as I argue right now, I don't believe the state has shown my client to be, in any way, involved. They mentioned this Alpha Durham that the state never presented. We don't know anything about him. We don't know if he's off in the department of corrections. We don't know where he is. Why isn't he here? Right now, ladies and gentlemen, all it is a DOR run and essentially what we've got here is that my client's name came up on a run. Nothing else. Mr. Durham is not here to present any testimony to corroborate these officers' version of the facts. The officers weren't able to indicate whoever was there, you know, what they were saying, who they were—they did not know them beforehand. They could not make an independent identification.

The state argued in rebuttal as follows:

[The state] Alpha Durham, ladies and gentlemen, Mr. Durham is equally available.

If the defense would have been helped at all by Alpha Durham, they would have brought him here, and they would have had him on. They've known about Alpha Durham from the reports way back then. Where did they get those reports? They got them from the state. If Alpha Durham could have helped this defendant in any way, they would have brought him here.

[Defense counsel] Your honor, I am going to object to the inferences with regard to any of that.

[The state] He's equally available, your honor.

[The court] The objection is overruled.

[The state] Alpha Durham is not a police officer. He's equally available to them. If he could have helped them, they could have had him here. Why should we call Alpha Durham? He didn't witness the transaction. He dealt with him twice. There's no evidence offered by the defense in this case by some person getting on the stand and saying, "Oh, at the time these offenses were alleged to have occurred, I was with the defendant." There's no alibi defense offered by other witnesses in this case. If there were any alibi witnesses that the defense could produce, they would.

▮ These excerpts were retaliatory remarks offered in rebuttal to the defense argument regarding the state's failure to call informant as a witness and, therefore, the state's remarks were within the bounds of acceptable argument. Ordinarily it is improper for the state to comment on defendant's failure to call a particular witness. *State v. Poe*, 721 S.W.2d 180, 181 (Mo.App. E.D.1986). An exception to this rule exists when the prosecutor's remarks are made in response to defense argument about the absent witness. *Id.* at 182. When responding to an issue raised in the defendant's closing argument, the prosecutor can go further than the normal bounds of closing arguments. *Id.* The state's comments were retaliatory in nature and directed at defendant's comments that the state did not call informant. Therefore, they were not objectionable. The state's closing argument was within the

bounds of acceptable argument and did not violate defendant's constitutional rights. Defendant's point three is denied.

▮ In point four, defendant argues the trial court erred by interrupting his questioning during voir dire. We find no error. During voir dire, defense counsel asked the panel members "Do you feel that in order to make a determination today, a decision in this case—do you want to hear from my client, or would you feel that you would have to hear from my client?" Venireperson Boswell responded "Yes."

Defense counsel then asked if anyone else had that same feeling. There was no response. Defense counsel proceeded by stating "Its perfectly alright. We just want to know how each of you feel about the evidence." There was a show of hands and the defense called on one of the jurors. With that, the court interrupted and informed the jury that "any defendant in any case has the right not to testify and you will be so instructed. No presumption of any kind can be drawn from the fact that the defendant does not testify." The defense was then allowed to continue questioning and asked if everyone could follow the court's instructions. There was no response. He then went back to venireperson Boswell. The court again interposed asking Boswell if she would be able to follow the court's instruction on this matter. She responded "yes." Defense counsel further pursued the issue with Boswell, inquiring as to whether the defendant's silence would gnaw at her. Boswell responded "no." He asked if it would gnaw at anyone and there was no response. He did not further question the jurors who had raised their hands earlier nor was he prevented from further questioning on the subject. Boswell was removed for cause. No other request for removal was made and defendant made no objection to the court's statement.

▮ Defendant now contends the court's actions cut off his questioning on the issue of the defendant's right not to testify. We disagree. The accused is entitled to a fair and impartial jury, and, therefore, is entitled to inquire on voir dire whether any panel mem-

ber would be prejudiced by defendant's failure to testify. *State v. Ward,* 702 S.W.2d 545, 547 (Mo.App. W.D.1985). Defendant was not deprived of his right to question the jury. He simply ended his questioning on the subject. The court in no way limited the defense questioning on voir dire.

The court also did not err in clarifying the issue raised by the defense by instructing the jurors that they may not draw any inferences from a defendant's failure to testify. On the contrary, the court has an obligation to insure a qualified panel. *State v. Byrd,* 646 S.W.2d 419, 424 (Mo.App. W.D.1983). Therefore, the court is obligated to instruct equivocating jurors on the defendant's rights and seek a recantation or remove the jurors for cause. *Id.* In this case, venireperson Boswell equivocated on this issue raised by the defense. At that point, the court was obligated to inform the juror of defendant's right and determine her ability to comply with the law. The trial court did not err.

Defendant further argues the court erred in not individually questioning the jurors who had raised their hands in response to the voir dire questioning about defendant's right not to testify. The court must individually question jurors who equivocate on an issue bearing on a defendant's constitutional rights and remove them unless they individually recant and agree to follow the court's instructions. *Id.* The problem with defendant's argument is there was no clear equivocation by the jurors who raised their hands in response to his questioning. Some jurors raised their hands in response to an ambiguous question on "wanting" and "needing" to hear from defendant followed by the statement "It's alright, we just want to know how you feel about the evidence" but none of the jurors in question spoke on the issue.[1] There is no way to determine from the record what the jurors would have said if called upon and defendant did not call on them. The circumstances here are far too tenuous to be construed as an equivocation. Therefore, we find no error.

Defendant also raises an argument regarding the court's refusal to allow the defendant to question the panel on the issue of mistaken identity. Defendant makes no argument. Therefore, the argument is deemed waived. Defendant's point four is denied.

In point five, defendant argues the trial court erred in denying his Rule 29.15 motion of ineffective assistance of counsel for failure to call witnesses. We find no error. Appellate review of a finding of ineffective assistance of counsel is limited to a determination that the trial court's ruling was clearly erroneous. *State v. Parker,* 886 S.W.2d 908, 929 (Mo. banc 1994). Findings and conclusions are clearly erroneous only if, after review, the court is left with the definite and firm impression a mistake has been made. *Id.*

To establish a claim of ineffective assistance of counsel for failing to call a witness, the movant must prove: 1) the witness could be located through reasonable investigation; 2) the witness would testify if called; and 3) the testimony of said witness would have presented a viable defense. *State v. Hodges,* 829 S.W.2d 604, 608 (Mo. App.E.D.1992).

There were two witnesses that could testify that defendant lent his van out in December, 1992. Defense counsel testified that he talked with the witnesses at issue and felt it would not be prudent to call them as witnesses. They could not testify that defendant lent his van out on December 1 or 10, 1992, nor testify to whom the van was lent. One of the witnesses claimed he borrowed defendant's van in December 1992, but he could not remember the date. This testimony does not establish a defense and it is not the kind of evidence that would have led to a different result at trial. Defendant's point five is denied. The judgment of the trial court is affirmed.

SIMON and HOFF, JJ., concur.

---

1. The only juror who equivocated on the defendant's right to testify was venireperson Boswell and she was removed despite recanting.