**Donald SHANKS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 5, 1971.

Paul D. Ross, Jenkins & Ross, Lexington, for appellant.

John Breckinridge, Atty. Gen., Laura Murrell, Asst. Atty. Gen., Frankfort, for appellee.

OSBORNE, Judge.

This is an appeal by Donald Shanks from a judgment of the Fayette Circuit Court sentencing him to:

1. Ten years in the penitentiary and a fine of $10,000 for the sale of narcotics on April 23, 1969.

2. Ten years and a fine of $10,000 for the sale of narcotics on May 11, 1969.

3. One year in the county jail and a fine of $500 for possession of dangerous drugs.

4. Twelve months in the county jail for the use of narcotics.

Appellant does not allege any error in connection with his conviction on the fourth charge.

The judgment of the trial court provides that the two ten-year sentences be served consecutively and the two one-year sentences be served concurrently at the conclusion of the ten-year sentences. In all, the defendant was sentenced to 21 years and a fine of $20,500.

The proceedings against appellant arose out of a major investigation by the Lexington Police Department of the use and sale of drugs in Lexington, Kentucky. One of its officers, Jay Silvestro, was utilized as an undercover agent wearing street clothes and driving his own automobile to obtain evidence concerning the drug traffic. Silvestro obtained help from a confidential informant by the name of John Burton. On April 23, 1969, the two of them in Silvestro's automobile parked at the corner of Deweese and Corral Streets, where appellant Shanks was standing. Appellant came over to the car and a request was made of him by Silvestro to buy drugs. After some conversation, appellant told Silvestro to give the money, $20.00, to John Burton, whom appellant knew well, and he would procure the drugs. The money was handed to Burton. Appellant then told Burton what to do. Following appellant's instructions, Burton walked over to the corner of the street and gave the money to Barbara Jean Smith, who was standing on the corner, in exchange for two small bags of white powder. During the entire transaction, appellant was looking on. Upon chemical analysis, the bags were found to contain heroin.

The second charge on which appellant was convicted arose out of a sale, which he admittedly made, directly to Silvestro. After this sale was made, the contents of the bags were examined and found to contain sugar.

After Silvestro had made the above two purchases from appellant, he solicited the services of several other officers and together they went to appellant's apartment. They knocked on the door. Appellant came to the door, which contained a large glass panel at the top. Sgt. Frank Fryman told appellant that he was under arrest for the illegal sale of narcotic drugs and ordered him to open the door. Appellant refused to open the door and the officers made their entry by force. Upon entering the room, appellant was placed under arrest. In the course of the arrest one of the officers noticed four small, yellow capsules on a night table near the spot where appellant stood. These were taken by the officers and, upon analysis, were found to contain phenobarbital.

Appellant contends that his conviction on these charges should be reversed for the following reasons:

1. That he was entrapped by officer Silvestro in making the first sale, thereby rendering the conviction invalid.

2. That his conviction of the second sale was invalid because the substance actually sold was sugar and not a narcotic.

3. That his conviction for possessing narcotics, viz., the four capsules, discovered when he was arrested is illegal because the evidence obtained from his premises was obtained as a result of an illegal search.

We find little merit in appellant's contention that he was entrapped. In support of his contention, he cites Eisner v. Commonwealth, Ky., 375 S.W.2d 825; Reels v. United States, 6 Cir., 239 F.2d 863; Alford v. Commonwealth, 240 Ky. 513, 42 S.W.2d 711.

■ All of the cases cited by appellant are cases wherein the claims relating to entrapment were rejected. It has long been the rule that the fact that a police officer hides his identity and solicits the purchase of illegal goods does not constitute illegal entrapment. Russell v. Commonwealth, Ky., 405 S.W.2d 683; Helton v. Commonwealth, Ky., 307 S.W.2d 209; 21 Am.Jur.2d, Criminal Law, § 145; 25 Am. Jur.2d, Drugs, Narcotics and Poisons, § 43. It is not entrapment where the purpose is "to detect unlawful traffic, and not to induce the commission of a crime." Cooke v. Commonwealth, 199 Ky. 111, 250 S.W. 802.

■ Here, Silvestro had information that Shanks was trafficking in narcotic drugs. The defense of entrapment is one that is often presented in charges of illegal trafficking in narcotic drugs. It is seldom sustained. For a complete discussion of the subject, see 33 A.L.R.2d, p. 879, Entrapment to commit offense with respect to narcotics law. Courts have generally found it difficult to state an all-embracing rule which will define the course of conduct or provocation by government officials constituting entrapment. Each case must usually be analyzed upon its own facts. As a general proposition it may be said that to constitute entrapment, the officer must do something that will cause the accused to violate the law when he would not otherwise have done so. His normal course of legal conduct must in some way be diverted into a course of illegal conduct by the acts of the officer. If all the officer does is make a purchase from one known or suspected to be dealing in the product, this in no wise constitutes entrapment. The cases generally support the rule that the defense of entrapment cannot successfully be sustained if the accused has previously been engaged in a course of similar crimes or if he has previously formed a design to commit the crime with which he is charged or similar crimes or is willing to commit the crime as shown by ready compliance.

■ The best manner available for obtaining direct evidence of this fact was to make a purchase. This purchase certainly did not constitute entrapment. Since this is the only objection made to the conviction on the charge arising out of the sale on April 23, that portion of the judgment is affirmed.

Appellant next contends that that portion of the judgment arising out of the sale on May 11, of the two bags of sugar, was not unlawful because the substance actually sold was not a narcotic drug. The conviction was obtained under KRS 218.020, which prohibits the unlawful sale of narcotic drugs. In 218.010(10) sale is defined as follows:

"'Sale' includes barter, exchange, or gift, or *offer therefor* and each such transaction made by any person whether as principal, proprietor, agent, servant or employee." (Emphasis added).

This act is a uniform one which has been adopted by forty-nine states, however, there is little authority on the point insisted upon by appellant.

The Commonwealth contends that the words "offer therefor" as contained in the statute mean that there is a violation if one offers for sale a narcotic and this would be true even though he had no narcotic in his possession. We have found two cases touching on the point. One is People v. Lott, 24 Ill.2d 188, 181 N.E.2d 112. This case dealt with the situation where the defendant thought he was selling a narcotic and the buyer thought he was buying a narcotic. It was later determined that the substance was in fact not a narcotic. There the court held the facts would not support a conviction but the case turns on the fact that the statute of Illinois sets out a separate offense for offering a narcotic for sale when, in fact, something that is not a narcotic is sold. The holding in this case would not within itself preclude a conviction under our statute on the facts here presented to us.

In State of Arizona v. Espinosa, 101 Ariz. 474, 421 P.2d 322, the merchandise sold did in fact contain a narcotic but was of such weak nature that the defendant contended it would be ineffective if used as such and, therefore, a conviction under the statute could not be obtained. The court there held under an act identical to ours that this fact was not material since he could be convicted of the offense of "offer[ing] to sell a narcotic drug."

 We are of the opinion that under the act if one offers for sale what he reasonably believes to be a narcotic drug and it later turns out in fact not to be a narcotic, this is sufficient to support a conviction. For here we have present the union of an act and a criminal intent, both of which are normally required to constitute a crime. This is not true of the case before us, for the reason that Shanks knew the material sold was sugar and not a narcotic. We do not believe this will support a conviction under the statute. Had he thought the material to be a narcotic the case would be different. Therefore, the judgment must be reversed on the conviction for a sale made on May 11, 1969.

Appellant's final contention is that the capsules seized by the officers at the time of his arrest should not have been permitted in evidence as they were illegally seized. There is a conflict between Shanks' testimony and that of the arresting officers concerning the arrest. Appellant in his brief adopts the facts as testified to by himself and argues from these facts that the arrest was illegal. It is elementary that the court was not bound to accept these facts. If the facts as testified to by the officers are accepted, then the arrest was perfectly legal and the capsules properly admitted in evidence. There is no question but what Silvestro had probable cause to believe Shanks had committed a felony. The law is universal where an officer has reasonable grounds to believe a felony has been committed, he may break into a house in order to effect the arrest

of one accused of a felony. 5 Am.Jur.2d, Arrests, § 89, p. 775. Since the officers saw Shanks through the glass door, they certainly had probable cause to believe that he was inside the building. It was their testimony that the capsules were lying on a table right next to the defendant, in plain view of the officers, at the time he was arrested. Incident to the arrest the officers could make a search of his person and the area from within which he might obtain a weapon or other items that could be used as evidence against him. Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. We believe this to be sufficient evidence upon which the trial judge could rule as he apparently did that the evidence was not obtained as a result of an illegal search. Therefore, the judgment for possession of dangerous drugs and the use of dangerous drugs is affirmed.

Affirmed in part. Reversed in part.

All concur.