THOMAS HILYARD *v.* STATE OF INDIANA.

[No. 2-674A152.  Filed March 17, 1975.]

*Anthony M. Benedict,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant (Hilyard) was charged with two counts. Count I charged defendant with possession of a dangerous drug and Count II charged the defendant with the sale of a dangerous drug.

Hilyard had a bench trial which resulted in the trial court finding him not guilty of Count I, possession of a dangerous drug, and finding him guilty of Count II, the sale of dangerous drugs, and sentence was passed on him in conformity with the statute.

The facts are that the drugs Hilyard was charged with the possession and sale of were alleged to be amphetamines.

John Zeilinga, a police informer and a known narcotics user, who was alleged to have a personal grudge against Hilyard, testified for the State. Zeilinga testified Hilyard had offered to sell him some "speed" at 11:00 to 12:00 o'clock P.M. on November 17, 1972, and that arrangements were made for Zeilinga to meet Hilyard at a designated place at 2:00 P.M. on the same day to complete the transaction.

In the meantime Zeilinga contacted the Indianapolis Police Department and arranged for a meeting with two officers of the Narcotics Squad and he met them on said date at 1:00 P.M. The narcotics officers "shook him down", removed all his personal property and gave him two $10.00 bills to make the purchase from Hilyard.

Officer Weiss testified the two $10.00 bills were marked for identification purposes.

Zeilinga testified that he met Hilyard at 2:00 o'clock at the designated place and drove to a rendezvous where they transacted the sale and Hilyard informed Zeilinga there were 91½ tabs of amphetamines. Following this the narcotics officers confiscated the pills from Zeilinga and arrested Hilyard.

This testimony was corroborated by the two police officers, one of whom additionally testified she performed a field test and tentatively believed the tablets to have been amphetamines. The tablets went through the regular channels of the police department to the laboratory for analysis. Dr. Carl Phillips, forensic chemist for the Indianapolis Police Department, testified he analyzed the tablets and that they were amphetamines, a dangerous drug. He further testified the tablets did not contain phenylpropanolamine or hydrochloride.

Hilyard testified and alleged Zeilinga had asked him to buy some diet pills. Hilyard gave an excuse he could not buy them then but that he did buy Hungrex diet pills and sell them to Zeilinga. He further testified that Mr. Zeilinga bore a grudge against him because of previous trouble and incidents involving Hilyard and Zeilinga's sister and father.

Hilyard steadfastly maintained that Zeilinga had requested him to buy diet pills and that he did buy Hungrex diet pills at a drugstore, not amphetamines, which he later sold to Mr. Zeilinga on the same day.

The trial court having heard the above stated evidence was cautious in the handling of this trial and granted a continuance at this time. The trial resumed four days later and Dr. Phillips was recalled by Hilyard. Dr. Phillips testified that he and Dr. Jerry Born of Butler University, an independent chemical analyst, re-examined the tablets admitted as a State's exhibit and alleged to have been amphetamines. Dr. Phillips admitted he was originally mistaken and the principal component of the tablets was phenylpropanolamine and that

the tablets *were* Hungrex pills and not amphetamines and that they could be purchased over the counter from any drugstore.

Hilyard's motion to correct errors actually only charges the insufficiency of the evidence to sustain a conviction on Count II of the affidavit and that the verdict is contrary to law. In his memorandum Hilyard further states:

> "To convict the defendant under the facts in this case would be in violation of the Due Process Clause under Federal and State law."

While the above statement in the motion to correct errors is somewhat vague, in light of the fact that a great majority of Hilyard's brief is devoted to the question of the constitutionality of the applicable statute we will consider this argument on appeal.

We are mindful that this court should be hesitant to pass on constitutional questions if an appeal can be decided on other grounds. However, in the interests of judicial economy we feel compelled to face the constitutional issue in the case at bar.

The statute in question is IC 16-6-8-2H, Ind. Ann. Stat. § 35-332H (Burns 1972 Supp.). That statute defines the sale of drugs as follows:

> ". . . any and every sale includes . . . (2) exposure, offer or any other proffer, whether or not the offeror has the present ability or capability to complete said transaction by delivering dangerous drugs. . . ."

It is Hilyard's contention that the statute is unconstitutional because one could be convicted of a sale of dangerous drugs even though there is no act which amounts to a transfer of narcotics. Thus, Hilyard's argument is that all crimes must consist of *mens rea* and some act by the defendant, and that the above statute is unconstitutional because no criminal act is required before there is a violation of the statute.

Anyone challenging the constitutionality of the statute carries a heavy burden of persuasion. *City of Aurora* v.

*Bryant* (1960), 240 Ind. 492, 165 N.E.2d 141. In addition, there is a strong presumption in favor of the constitutionality of any statute. *State* v. *Bigbee* (1973), 260 Ind. 90, 292 N.E.2d 609; *Lawrence* v. *State* (1972), 259 Ind. 306, 286 N.E.2d 820. If it is possible for this court to reasonably construe the statute which is challenged then the statute itself is constitutional. *Progressive Imp. Assn. of Downtown Terre Haute* v. *Catchall Corp.* (1970), 254 Ind. 121, 258 N.E.2d 403; *State* v. *Clark* (1966), 247 Ind. 490, 217 N.E.2d 588.

Though this court may not agree with the statute as written it is not our duty to pass on the wisdom or the expediency of the statute when judging its constitutionality. *State* v. *Levitt* (1965), 246 Ind. 275, 203 N.E.2d 821; *Wright* v. *Steers* (1962), 242 Ind. 582, 179 N.E.2d 721.

Hilyard does not present his constitutional question as one concerning a procedural irregularity. The question, therefore, is one of "substantive due process". As such the question facing this court is whether the statute concerned is reasonable and whether the content of the statute is reasonably related to the proper object to be attained. Stated differently, when considering due process, a statute which deprives a person of his liberty should not be arbitrary, capricious, or irrational. *Jeffries* v. *Turkey Run Consolidated School District*, 492 F.2d 1, (7th Cir. 1974); *Barrick Realty, Inc.* v. *City of Gary, Ind.*, 354 F.Supp. 126 (N.D. Ind. 1973), affirmed 491 F.2d 161 (7th Cir. 1974).

Before reaching a conclusion we note that this particular statute has been considered in two earlier opinions. In *Pryor* v. *State* (1973), Ind. App., 291 N.E.2d 370, this court interpreted the above statute as to the sale of narcotics as follows:

". . . It is our observation that the addition of the words '. . . whether or not the offeror has the present ability or capability to complete said transaction . . .' makes an offer to sell the criminal act without regard to whether or not consummation of the sale by delivery of a dangerous drug is actually intended.

When the transaction is measured against the previously quoted definition of a sale, we find that whether or not the material delivered is, in fact, a dangerous drug matters not under the facts in this case."

That case was reversed, in *Pryor* v. *State* (1973), 260 Ind. 408, 296 N.E.2d 125. However, in reversing, the Supreme Court did not discuss the statute itself or the above language in the earlier case which interpreted said statute. The second *Pryor* case was decided on grounds of sufficiency of the evidence. In our opinion, therefore, the language in the initial *Pryor* decision as to the statute involved remains valid.

Turning to the language of the statute itself it is clear that any offer is alone sufficient to constitute a violation. However, unless there are reasonable grounds for considering a mere offer to be a sale the statute may be unconstitutional inasmuch as it would deprive citizens of their liberty without rational justification. It is our conclusion that a reasonable construction of the statute is possible and that the language of the statute is reasonable in light of the object to be attained. The reason for the deprivation is not so inadequate as to be considered arbitrary. *Jeffries* v. *Turkey Run Consolidated School District, supra.*

The Legislature was obviously concerned with an increasing amount of illicit narcotics traffic in the State. It is reasonable to assume that a great majority of narcotics sales must be preceded by either a request and acceptance or an offer and acceptance. By making the offer to sell dangerous drugs a violation, this statute attacks those who are wont to traffic in drugs, i.e., attacks those who offer drugs to others. The purpose in considering the offer a violation is to interrupt or prevent the initial transfer of the drugs from the pusher to the buyer. Thus, the flow of illicit drugs would be stopped at its source. We feel that the initial *Pryor* decision was correct in stating that the statute "makes an offer to sell the criminal act" and we are convinced that the Legislature had valid reasons for making the initial offer

an act constituting a sale of dangerous drugs whether or not the offeror has the present ability or capability to complete said transaction by delivering dangerous drugs. In effect, this statute merges intent and act in the offer. The offer alone is sufficient as an act of sale and the criminal intent *(mens rea)* can be inferred from this initial offer or act. The inference of intent from the doing of an act is not new to the area of criminal law. *Barnhart* v. *State* (1973), 158 Ind. App. 636, 304 N.E.2d 316; *Ellis* v. *State* (1973), 159 Ind. App. 1, 304 N.E.2d 546; *Gorbett* v. *State* (1974), 162 Ind. App. 164, 318 N.E.2d 592.

In light of the *Pryor* cases it is our opinion that a reasonable construction of the statute here challenged is possible. Therefore, given the strong presumption in favor of the constitutionality of the statute we feel that Hilyard has failed in his burden of showing the unconstitutionality of the statute.

Having passed on the constitutionality of the statute the only remaining question is whether the evidence is sufficient under the statute as construed herein.

All that is necessary is that there be sufficient proof of an offer to sell. On appeal we cannot weigh conflicting evidence nor judge the credibility of witnesses, but must support the decision of the trial court if there is substantive evidence of probative value from which guilt can be inferred. *Stamper* v. *State* (1973), 260 Ind. 211, 294 N.E.2d 609.

The evidence most favorable to the State discloses that Zeilinga was approached by Hilyard and asked if he or someone else wanted to purchase some "speed"; that arrangements were made for the sale of amphetamines; that Zeilinga paid Hilyard $20.00, and that Zeilinga at all times was under the impression he was receiving amphetamines. Given the above evidence we must conclude that there was sufficient evidence that Hilyard had offered to sell narcotics in violation of the statute, and further, that the judgment was not contrary to law.

Finding no reversible error the judgment is affirmed.

Robertson, C.J. and Lybrook, J., concur.