875 P.2d 166

**The STATE of Arizona, Appellee,**

v.

**Ricky STRONG, Appellant.**

**No. 2 CA–CR 92–0894.**

Court of Appeals of Arizona,
Division 2, Department A.

Nov. 9, 1993.

Review Denied June 21, 1994.

**508**

Grant Woods, Atty. Gen. by Paul J. McMurdie and Diane M. Ramsey, Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Susan M. Quillin, Tucson, for appellant.

## OPINION

LIVERMORE, Presiding Judge.

Appellant was charged with unlawful sale of a narcotic drug and unlawful offer to sell a narcotic drug, both class two felonies. Following a jury trial, he was acquitted of the sale but convicted of the offer. He admitted one prior conviction and commission of the offense while on pretrial release. The trial court imposed a presumptive, enhanced term of 12.5 years in prison.

On appeal, appellant first argues that his conviction must be reversed because the jury was not instructed on one element of the offense, that is, intent to sell. Although the statute under which he was charged, A.R.S. § 13–3408(A)(7), only forbids "knowingly" offering to sell a narcotic drug and does not expressly require proof of intent to sell, appellant contends that this is nonetheless an element of the offense. He relies on commentary to the 1978 criminal code revisions indicating that prior case law remained applicable to the new provisions on drug offenses.

Admittedly, the predecessor to § 13–3408(A)(7) had been construed to require proof of a specific intent to sell. *See State v. Enriquez,* 109 Ariz. 570, 514 P.2d 491 (1973). Unlike the present statute, however, the prior statute contained no specific *mens rea.* Section 13–3408(A)(7) requires proof that the defendant "knowingly" offered to sell the drug. There is thus no reason to read into the statute the additional requirement of proof of intent to sell. The jury was properly instructed that it must find that appellant acted "knowingly," and was given the statutory definition of that term. We therefore find no error in the instructions.

We also reject appellant's related argument that, absent the incorporation of a specific intent requirement, § 13–3408(A)(7) is unconstitutionally vague and overbroad, denies him equal protection and due process, and violates the prohibition against cruel and unusual punishment. One basis for this argument is his contention that without a *mens rea* requirement, the statute punishes persons whose "offers" are "fraudulent, insincere or made in jest." This argument is negated by the requirement that a defendant act "knowingly," that is, that the defendant "is aware or believes that his or her conduct" is that "described by a statute defining an offense...." A.R.S. § 13–105(6)(b). The conduct proscribed by the statute in question here is an offer to sell narcotic drugs. To be convicted, a defendant must be aware or believe that he or she is making such an offer. This clearly would not include the sort of conduct described by appellant. Accordingly, we find no merit to this constitutional claim. Appellant's remaining constitutional claims have been disposed of by Division

One's decision in *State v. Padilla*, 169 Ariz. 70, 817 P.2d 15 (App.1991).

■ Appellant next contends that the evidence was insufficient to support the conviction because the evidence showed only preliminary negotiations. We disagree. We note initially that an offer to sell a narcotic drug is a completed offense. *State v. Padilla, supra.* That is, the state was not required to prove that the narcotic was produced or that money changed hands. The evidence here was that an undercover officer went to a residence where he had previously purchased crack cocaine from appellant to negotiate a larger purchase. The officer testified that appellant came outside and asked "if I still wanted to purchase the narcotics from him, the cocaine." After the officer went to his truck to get appellant a beer, "Ricky and I talked about a price, being $400 for a half ounce of cocaine. Ricky said to come back at around 9:00 o'clock that evening and we'd be ready to go."

The officer came back at 9:30, and appellant arrived shortly thereafter, asking what had taken the officer so long. He then said that he would be right back and left again in his vehicle. Appellant did not return, but was observed by surveillance officers cruising back and forth in front of the house. The surveillance officers concluded that appellant had spotted them and they drove off. Appellant followed the officers for awhile, then split off from them and never returned to the residence. He was arrested three months later. The evidence that appellant asked if the officer wanted to buy more cocaine and negotiated a price, together with his actions in arranging for a later meeting and his conduct and conversation at that second meeting, was more than sufficient to support the conviction.

■ Next, appellant argues that the trial court committed reversible error in admitting the officer's testimony as to a statement made by "Doris," another drug dealer who was present at the residence when the officer arrived. The officer parked his truck, walked to the rear of the residence and met Doris, who told him to "stick my head in and say hi to Ricky, meaning stick my head through the open window." The officer did

so, saw appellant playing drums and appellant responded that he would be out in a few minutes. Appellant argued that Doris's statement was inadmissible hearsay, reinforcing the state's case against appellant's defense of misidentification.

Although its ruling is not entirely clear, it appears that the trial court concluded that the statement "say hi to Ricky" was not hearsay because it was not admitted to prove the truth of the words spoken, that is, to prove that the person she referred to was Ricky. We agree, for two reasons. First, the statement was not intended as an assertion by the declarant that the person inside her house was named Ricky. Rather, it was intended as a directive to the officer to speak to the person in her house, whatever his name might be. Had there been a dispute as to whether anyone was in the house, the statement would have been hearsay. *Cf. State v. Carrillo*, 156 Ariz. 120, 750 P.2d 878 (App.1987), *vacated in part on other grounds*, 156 Ariz. 125, 750 P.2d 883 (1988). But no one disputed that another person was in the house who responded to the salutation and ultimately came out and spoke with the officer. Moreover, the issue here was not whether the person to whom the officer was referred was named Ricky, but rather whether he was the same person the officer identified in court as appellant. Because Doris's statement was not intended as an assertion pertaining to that issue, it was not hearsay. Second, the statement was admissible to show the effect on the hearer, that is, how the officer first made contact with appellant that night. For that reason also, the statement was not hearsay. *See State v. Hernandez*, 170 Ariz. 301, 823 P.2d 1309 (App.1991).

■ Appellant also contends that the trial court abused its discretion in precluding expert testimony on eyewitness identification, citing *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983). We note initially that *Chapple* reaffirms that "[t]he rule in Arizona will continue to be that in the usual case we will support the trial court's discretionary ruling on admissibility of expert testimony on eyewitness identification." *Id.* at 297, 660 P.2d at 1224. The court found reversible

error in the preclusion of such testimony there because of the "peculiar" facts of the case, *id.*, which rendered eyewitness identification a proper subject of expert testimony.

The case involved a murder occurring during a drug deal by a person whom the witnesses had never met prior to that night and did not identify until 13 months later. In the interim, the witnesses were shown many other photographs, including one of the defendant which they failed to identify. They also picked out another person as resembling one of the gunmen; that person was an acquaintance of both one of the perpetrators and one of the victims. The proffered expert testimony was carefully addressed to general factors relevant to the reliability of eyewitness identification which the jury could find applicable to the facts in that case.

The facts in the present case are significantly different. The officer testified at the hearing on the motion that he knew who appellant was prior to the first transaction because a confidential informant pointed him out on two earlier occasions. At the first transaction, he recognized appellant standing in the doorway of the house and, even though the lighting conditions inside were poor, he was able to recognize him again during the sale by height, weight, size and tone of voice. When he arrived at the house for the second transaction, which was the subject of his conviction, he recognized appellant as the person from whom he had purchased the week before. After the offense, but prior to appellant's arrest three months later, the officer recognized appellant's photograph on the wall of a police station office while he was there during an unrelated investigation. Given the officer's numerous contacts with appellant over a period of time, the factors affecting identification which were held to be the proper subject of expert testimony in *Chapple* are not present here. Accordingly, we find this case sufficiently distinctive from *Chapple* to place it in the "usual" category where the trial court does not abuse its discretion in concluding that expert testimony

would not be of assistance to the jury. Ariz. R.Evid. 702, 17A A.R.S.; *Chapple, supra.*

■ Finally, appellant argues that the trial court erred in imposing a $2,800 fine pursuant to A.R.S. § 13–3408(E) because no narcotic drug was ever produced. We disagree. By its language, the fine applies to a person who is convicted of any violation of the statute, which includes unlawful offers to sell.

We have reviewed the entire record for fundamental error and have found none. We therefore affirm.

LACAGNINA and FERNANDEZ, JJ., concur.