**STATE of Missouri, Respondent,**

v.

**Karel M. SAMMONS, Appellant.**

**No. ED 78920.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 24, 2002.

Nancy A. McKerrow, Assistant State Public Defender, Columbia, MO, for appellant. ·

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Edgington, Asst. Atty. Gen., Jefferson City, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Appellant Karel Sammons ("Defendant") appeals the judgment entered upon his conviction by a jury for two counts of the Class B felony of delivery or sale of a controlled substance. He was sentenced to two fifteen-year terms of imprisonment to be served consecutively in the Missouri Department of Corrections. We affirm in part and reverse in part.[1]

The facts viewed in a light most favorable to the judgment are as follows. The Northeast Missouri Narcotics Task Force had evidence that Craig Haley ("Haley") had delivered a controlled substance. In exchange for possible leniency on this charge, Haley agreed to be a confidential informant.

Haley informed investigating agent Michael Beilsmith ("Beilsmith") that he could buy crack cocaine from Defendant. Beilsmith and Haley then set up a buy from Defendant. They met at a confidential location and Beilsmith thoroughly searched Haley for drugs, money or weapons. Haley telephoned Defendant, who told him to meet him at Steve Blackburn's ("Blackburn") house in Hannibal. Beilsmith gave Haley $50.00 and placed a body wire on him. They then drove to the house and Beilsmith parked so that he could observe Haley walking toward the house, although he could not see him enter.

Defendant was already at Blackburn's house when Haley arrived. Haley told Defendant that he wanted to buy a $50.00 piece of crack and gave Defendant the money that Beilsmith had given him. Defendant told Haley he would be back in five minutes and he left the house. Beilsmith, from his car, observed a man wearing light colored pants leaving Blackburn's house, although Beilsmith could not see the man's face. Shortly thereafter, Defendant returned to Blackburn's house with a bag of crack containing several pieces. He cut a $50.00 piece and gave it to Haley. Haley then asked Defendant if he could buy a 1/16 ounce or an 8–ball and Defendant said he could "handle it." Haley said he would call Defendant later that evening and he left Blackburn's house.

Haley walked back to where Beilsmith had parked and gave him the crack cocaine, which was in a plastic wrapped package. Beilsmith wrapped the package in a piece of notebook paper with the case file written on it and put the package in his buttoned shirt pocket. Later that night, he returned to his office and properly packaged it, labeled it and sealed it.

That evening, following the same procedure, Beilsmith again dropped Haley off at Blackburn's house, after he was again searched for contraband. This time, Haley was given $100.00. Defendant was al-

---

1. Our original opinion in this case transferred the case to the Missouri Supreme Court pursuant to Rule 83.02. After hearing oral arguments, the Missouri Supreme Court retransferred the case to this court. In this opinion, we readopt our prior opinions and disposition of the appeal except for the prior references to transfer.

ready at Blackburn's house when Haley arrived. He took Haley's money and left. After waiting approximately one hour and ten minutes for Defendant to return, Haley returned to Beilsmith's car without the money and without any drugs.

The next day, Haley viewed a photographic line-up. Haley selected Defendant's photograph as the man he dealt with. Beilsmith also turned over the package of crack cocaine to Lieutenant Joe Hunold ("Hunold") at the Hannibal Police Department. Hunold logged it into evidence and took it to the crime lab for testing. Josh Robertson, a criminalist for the Missouri Highway Patrol, tested the contents of the package and determined that it was cocaine base.

■ Defendant raises three points on appeal. His first point is that the trial court erred and abused its discretion when it overruled Defendant's objection to the prosecuting attorney's statements during voir dire which Defendant claims improperly defined the concept of "proof beyond a reasonable doubt." Defendant claims this ruling violated his rights to due process and a fair trial because the prosecutor's questions were not designed to probe for bias or to determine whether the panel members could follow the law, but rather were argumentative and an improper attempt to define reasonable doubt. We disagree. The prosecutor did not improperly define reasonable doubt. He merely sought a commitment from the prospective jurors that they would disregard what they may have seen on television shows about the burden of proof and follow the instructions given by the court. The trial court did not abuse its discretion in allowing this line of questioning. *State v. Sincup*, 674 S.W.2d 689, 690 (Mo.App.1984). Point denied.

■ Defendant's second contention is that the trial court erred and abused its

discretion when it overruled Defendant's objection and admitted State's Exhibit 2, a baggie alleged to contain cocaine base. Defendant claims that the State failed to prove that Exhibit 2, the baggie of crack cocaine sold to Haley, was the same cocaine tested by the Missouri Highway Patrol since the State failed to establish an adequate chain of custody. We disagree.

■ The determination of whether the evidence is sufficient to establish a valid chain of custody for a given exhibit is within the sound discretion of the trial court. *State v. Davenport*, 924 S.W.2d 6, 9 (Mo.App.1996). Missouri law requires that the State provide "reasonable assurance" that an exhibit sought to be introduced is received from the defendant and is in like condition at the time of introduction as when received. *State v. Clifford*, 815 S.W.2d 3, 7 (Mo.App.1991). The chain of custody must also provide reasonable assurance that the evidence has not been substituted or tampered with. *Davenport*, 924 S.W.2d at 9. However, it does not require proof of hand-to-hand custody, a showing that the exhibit was continually watched, or proof of the exclusion of every possibility that the evidence has been disturbed. *State v. Anthony*, 857 S.W.2d 861, 865 (Mo.App.1993). The trial court may assume, absent a showing of bad faith, ill will or proof, that the officials charged with custody of the evidence properly discharged their duties and did not tamper with the evidence. *Id.* Moreover, "the chain of custody of physical evidence is irrelevant where the exhibit is positively identified." *Clifford*, 815 S.W.2d at 7; *State v. Sullivan*, 935 S.W.2d 747, 754 (Mo.App.1996). The record reflects that the criminalist positively identified Exhibit 2 at trial. Accordingly, we find no abuse of discretion in admitting this evidence. Point denied.

■ In his final point, Defendant contends the trial court erred in submitting Count II to the jury because the State failed to make a submissible case on that Count. Specifically, Defendant contends that the State failed to prove that he knowingly sold a controlled substance because it failed to produce any evidence that Defendant actually possessed or had access to any crack cocaine when he accepted the money from Haley. According to Defendant, since he simply took Haley's money and never returned with any drugs, the evidence merely shows an intent to steal Haley's money. If this was Defendant's intent, he could not be guilty of knowingly selling a controlled substance. We agree.

Our review of a claim of insufficient evidence is "limited to determining whether the evidence is sufficient to persuade any reasonable juror as to the elements of a crime beyond a reasonable doubt." *State v. Rousan,* 961 S.W.2d 831, 841 (Mo. banc 1998). The court accepts as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989).

The verdict director for Count II instructed the jury as follows:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 6, 1999, in the Township of Mason, County of Marion, State of Missouri, the defendant knowingly sold cocaine, a controlled substance, to CI 287, and

Second, that defendant knew that the substance he sold was cocaine, a con-

trolled substance, then you will find the defendant guilty under Count II of selling a controlled substance.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Sale includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee.

Mischaracterizing Defendant's argument to be a complaint that the crack cocaine was never physically transferred to Haley, the State emphasizes that "sale" includes an "offer therefor." Thus, the State argues, actual delivery is not an element of the crime. What Defendant actually argues is that the State never proved that Defendant either possessed or had access to any crack cocaine in the first place. Even if there had been a transfer, the State would have the burden of proving that what was transferred was, in fact, cocaine, thus providing an evidentiary basis for the required finding that Defendant "knowingly sold cocaine" and that he "knew that the substance he sold was cocaine."

Suppose, for example, that the State's evidence was exactly the same except that Defendant returned after a few minutes with a plastic bag filled with a substance that, upon a chemical analysis, turned out to be talcum powder. If Defendant knew the substance in the plastic bag was talcum powder, he would be guilty of stealing by deceit. If he thought it was crack cocaine, he would be guilty of attempting to sell a controlled substance.[2] It may

2. Section 564.011.2 RSMo 2000, which defines "attempt" provides:

It is no defense to a prosecutor under this section that the offense attempted was, under the actual attendant circumstances, fac-

well be that the State will find it difficult to prove Defendant's state of mind. The fact remains, however, that the ambiguous evidence in this case is fully consistent with three different crimes: sale of a controlled substance, attempted sale of a controlled substance or stealing by deceit. The evidence is therefore insufficient, without more, to prove the commission of any one of these crimes beyond a reasonable doubt.

We further note that if the State is correct that the mere utterance of the offer for sale is sufficient to support conviction, it would be unnecessary for the State in most cases, even cases involving a completed transfer, to prove that what was transferred was, in fact, a controlled substance. It would also mean that MAI–CR 325.04, the source of the above-quoted instruction, is in error. Since the State would not need to prove that the controlled substance offered for sale even exists, it would not need to prove that Defendant "knew that the substance he sold was cocaine, a controlled substance." Rather, the State would only need to show that Defendant knowingly uttered the words constituting the offer. We cannot agree that this was the legislature's intent.

On the record presented, there was no evidence that Defendant possessed or had access to any controlled substance for the second attempted purchase. Since Defendant took the money and never returned, it is equally reasonable to infer that Defendant never intended to transfer anything to Haley. He simply stole his money. That would clearly be a crime, but not the sale of a controlled substance. Accordingly, we hold that the evidence was insufficient to establish the elements of Count II beyond a reasonable doubt. We therefore reverse the judgment of conviction on

Count II, affirm the judgment and sentence on Count I and remand with directions to vacate the judgment and sentence on Count II.

SHERRI B. SULLIVAN, P.J., concurs.

LAWRENCE E. MOONEY, J., dissents in separate opinion.

LAWRENCE E. MOONEY, Judge, dissenting.

Never promise more than you can perform.

> —Publilius Syrus, First century, B.C.

Defense counsel raises a difficult defense. She asserts, at least as to the second transaction, that the defendant was a thief rather than a drug dealer. Defense counsel challenges the state's proof that the defendant had the ability to deliver the drugs he was selling. Assuming all facts and inferences favorable to the jury's verdict, as we must, one might believe that the defendant did not lose his access to illegal drugs in the two hours that intervened between the two charged transactions. One might also suspect that a dealer that took money without access to his advertised wares would not be long for this world. But my dissent is not motivated by antipathy for the defendant; nor is it premised on a dispute as to the meaning of the record. I dissent because an "offer for sale," as commonly understood, does not require proof of a defendant's capacity to deliver the drugs.

It is indisputable that a sale of drugs includes an "offer for sale." That is because our bible—the Missouri statutes—tells us so. According to sections 195.110 and 195.211, illegal delivery of a controlled substance includes a sale, and a sale in-

---

tually or legally impossible of commission, if such offense could have been committed

had the attendant circumstances been as the actor believed them to be.

cludes an "offer therefor." Thus an "offer for sale" is a sale.

The more difficult question is whether an "offer for sale" requires proof of the defendant's capacity to deliver. In *State v. Tierney,* the Western District stated that because of the broad inclusiveness of the statute's definition of delivery, "sale shall be given an application unconfined by definitions of the civil practice on commerce and contracts." 584 S.W.2d 618, 623 (Mo. App. W.D.1979). We have held that "[i]t is not necessary that the elements of a commercial sale, i.e., fixed price, *delivery,* and payment, be present in order to constitute a sale." *State v. Crumbaker,* 753 S.W.2d 76, 78 (Mo.App. E.D.1988). (Emphasis added.) Of course, the rule of lenity requires that criminal statutes be construed more strictly against the State. *State v. Withrow,* 8 S.W.3d 75, 80 (Mo.1999), *citing State v. White,* 622 S.W.2d 939, 944 (Mo. banc 1981) and *State v. Hobokin,* 768 S.W.2d 76, 77 (Mo. banc 1989). However, in ascertaining the intent of the legislature, which is our polestar in interpreting statutes, we also should take the word or phrase in its plain, ordinary, and usual sense. *Martinez v. State,* 24 S.W.3d 10, 16 (Mo.App. E.D.2000). A street vendor might "offer for sale" apples available for immediate consumption. A fruit-of-the-month club might "offer for sale" apples it has no present capacity or intent to deliver; indeed, the apples may not even be yet in existence. Yet, in the plain, ordinary, and usual sense of the phrase, both of these are "offers for sale." According to the Webster's Dictionary, the term "offer" is defined "to present for acceptance or rejection ... to declare one's readiness or willingness ... a presenting of something for acceptance ... an undertaking to do an act or give something on condition that the party to whom the proposal is made do some specified act or make a return promise." MERRIAM WEBSTER'S COLLEGIATE DIC-TIONARY 806–807 (10th ed. 1994). Thus, an "offer for sale" involves the putting forth of a proposal for acceptance or rejection. Whether the "offer for sale" anticipates immediate or future delivery of the wares sold, and whether the wares are delivered or not, the "offer for sale" is complete when the sale is proposed. A drug dealer who defaults in his duty to deliver, whether such default is due to want of will or want of wares, has nonetheless made an "offer for sale." The circumstance that he has failed to honor his offer should not free him from the reach of our criminal laws.

Defense counsel herself has made, to my mind, a perilous proposal by conditioning a defendant's guilt on his access to drugs. First, in "offers for sale" that anticipate future delivery of drugs, defendants are free to negotiate such transactions as long as they have no current access to the drugs. Second, the parameters of "access to drugs" are unclear. Clearly, defense counsel does not find the defendant's drug-dealing some two hours earlier sufficient evidence of his access to drugs. Whether a defendant has access to drugs in his girlfriend's purse, his minor nephew's lunchbox, or a friend's bedroom are open questions. Finally, it may be difficult to prove access to drugs by drug dealers that use third parties—"mules" and "runners"—to deliver their illegal wares.

Our Supreme Court has yet to offer its definitive guidance. In *State v. Hendricks,* 944 S.W.2d 208 (Mo. banc 1997), Judge White, reviewing a claim that the majority found unpreserved, noted a distinction between an "offer for sale" and an "offer to sell," a distinction I find difficult to define. In everyday commerce and in common parlance, "offers for sale" occur in catalogues and over the internet without proof of the capacity to effect delivery. Many state courts have found that a mere

offer to transfer a controlled substance constitutes a sale under similar statutory language. *State v. Strong,* 178 Ariz. 507, 875 P.2d 166 (Ct.App.1993); *People v. Brown,* 116 Ill.App.2d 228, 253 N.E.2d 478 (1969); *Hilyard v. State,* 163 Ind.App. 406, 324 N.E.2d 516 (1975); *State v. Allen,* 292 A.2d 167 (Me.1972); *People v. Harper,* 39 Mich.App. 134, 197 N.W.2d 338 (1972); *State v. Mosley,* 55 Ohio App.2d 178, 380 N.E.2d 731 (1977); *Jimenez v. State,* 838 S.W.2d 661 (Tex.App.-Houston [1st Dist.] 1992). Some courts, to the contrary, have found their statutes mandated a specific intent to sell that would require proof of the substance sold. *See State v. Werner,* 8 Kan.App.2d 364, 657 P.2d 1136 (1983); *People v. Jackson,* 59 Cal.2d 468, 30 Cal. Rptr. 329, 381 P.2d 1 (1963); *Shanks v. Commonwealth,* 463 S.W.2d 312 (Ky.1971); *People v. Braithwaite,* 162 Misc.2d 613, 617 N.Y.S.2d 284 (Sup.Ct.1994).

Under defense counsel's proposal, a defaulting drug dealer may not be amenable to prosecution for either sale of drugs or theft. In a prosecution for theft by deceit, Missouri statutes do not sanction an inference of deceit, a requisite element, merely founded on the drug dealer's failure to perform his promise to deliver drugs. Section 570.010(6). Thus a defendant's prosecution for selling drugs may be met with the claim that he was stealing. And his prosecution for theft by deceit may be met with the assertion that he was, in fact, selling drugs. Thus each prosecution may be met with the claim that he was committing the other crime. Such cannot be the intended operation of our criminal laws.

I respectfully dissent.