

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
                         )
          Respondent, )
                         )    No. SD38593
    v.                      )
                         )    **Filed: September 22, 2025**
ANDREW J. SALES, JR., )
                         )
          Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable Scott A. Lipke, Judge

### **AFFIRMED**

Andrew J. Sales, Jr., a prior and persistent felony drug offender, rejected a plea offer that would have guaranteed no more than a four-year sentence, nearly half of which he had already served awaiting trial. Instead, he chose to proceed to jury trial on serious drug charges without the assistance of counsel. The jury found him guilty of all charges, and the trial court sentenced him to consecutive terms of incarceration totaling 52 years plus a fine of $1,000.

On appeal, Sales claims a search warrant was not supported by probable cause, the evidence was insufficient to support his convictions, and he was denied his right to counsel. Finding no merit in any of these claims, we affirm.

**Background**

An informant notified police that a named person was distributing methamphetamine from his apartment and possessed stolen property and firearms in his apartment. Another informant told police the informant had observed the named person use a digital scale while selling a small amount of methamphetamine to another person who had come to the named person's apartment. Police surveilled the apartment and saw the named person coming and going, as well as several other persons who would enter, stay for a few minutes, then leave. These people often brought personal property, such as power tools or a bicycle, into the apartment with them, but they did not leave with that property.

A search warrant was sought and granted based on the information from the informants and observations made during police surveillance. While executing the search warrant, police knocked on the door, announced their presence, and attempted to open the door, but it was stuck as if someone was holding it closed. Someone on the other side of the door yelled, "They got a search warrant[.]" When police finally forced the door open Sales was standing immediately behind it. The only other person in the apartment was the target of the investigation, who was found exiting a bathroom in which water was circulating in the toilet as if something had been flushed but was clogging the drain.

Suspecting the target of the investigation had flushed evidence, police searched the drain pipe and secured a black sock stuffed with plastic bags containing a crystalline substance. In the apartment, they found new and used syringes, new and used glass pipes, and several digital scales, some of which were coated in residue. They found one such scale in a bag along with Sales' identification. In Sales' pants pocket police found a plastic bag with a few ounces of a white crystalline substance and a burned glass pipe with white residue. Field testing indicated

2

the substance in the sock, on the scales, in Sales' pocket, and on the used glass pipes was methamphetamine.

Sales was arrested, read **Miranda**[1] warnings, and interviewed. Sales knew the target of the investigation and had been staying in his apartment for about a week. Sales described who supplied the methamphetamine, how it was made, how it was distinctive from other forms of methamphetamine, and the cost per pound for different varieties of methamphetamine.

Sales was charged with second-degree drug trafficking, felony possession of a controlled substance, tampering with physical evidence in a felony prosecution, and two counts of unlawful possession of drug paraphernalia (digital scale and glass pipe). He waived counsel in the associate circuit court. After the matter was bound over to the circuit court, Sales waived counsel in writing on a form containing the information required by § 600.051 RSMo. (2016), which the court accepted after inquiry in a **Faretta**[2] hearing. Sales reconfirmed this decision informally at subsequent motion hearings and again in writing and orally during another **Faretta** inquiry two weeks prior to trial. He surmised on the record that he was "more than qualified to represent [himself]" because he had "no problem with the rules of evidence" and had represented himself at five prior jury trials.

At trial, the State presented several exhibits and the testimony of seven witnesses. Police officers testified to their knowledge, observations, and actions before and during the execution of the warrant, as well as the handling of evidence seized. Two forensic chemists testified about receipt of evidence, laboratory procedures, and their ultimate conclusions that the substances found in the baggies in the sock and in Sales' pocket were methamphetamine. Sales cross-

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[2] **Faretta v. California**, 422 U.S. 806 (1975).

examined the State's witnesses and called ten witnesses to testify for the defense.

The jury deliberated less than an hour before returning five guilty verdicts. Sales' bond was revoked and he was remanded to the custody of the sheriff. The court, *sua sponte*, extended the time for filing a new trial motion by ten days, informing Sales he had a total of 25 days in which to file such a motion. He asked the court only one question: "When can I get an appeal bond?"

Fifteen days later, Sales filed a one-page "Motion for Appointment of Counsel and Appeal Bond," which contained a caption, signature, certificate of service, and one sentence: "Comes now Andrew J. Sales, Jr., pro se, and request[s] this Court for an order appointing counsel and setting appeal bond in the above case." Nothing in the motion indicated that a ruling was time sensitive. Thirteen days after Sales' motion had been filed, the court granted the request for appointment of counsel and denied bond.

In his meeting with appointed counsel, Sales directed counsel to file a motion seeking Sales' release on bond. Counsel replied she would file the motions she determined appropriate. Sales instructed counsel to withdraw if she was unwilling to file a motion for reconsideration of bond.

Sales' appointed counsel filed an untimely motion for new trial. The hearing[3] on that motion began with Sales' counsel announcing that Sales no longer desired to be represented, which Sales confirmed to the court on the record, and presentation of another written waiver of counsel, which the court accepted after yet another ***Faretta*** inquiry. After counsel was

---

[3] An untimely new trial motion is not permitted by Missouri law and is a procedural nullity. **State v. Vandergrift**, 669 S.W.3d 282, 293 (Mo banc 2023). Nevertheless, the record generated at the hearing on that motion is a part of the record on appeal and may be reviewed and considered by this court. ***Id.*** at 294 n.13.

4

discharged, Sales was given the opportunity to argue the new trial motion. He disavowed the motion and instead chose to argue a motion to reinstate bond, which he had filed pro se. The circuit court denied the motion for new trial as untimely and sentenced Sales. At the conclusion of the sentencing hearing, the circuit court inquired whether Sales wanted counsel appointed for an appeal. He replied, "No. I'm going to file my own notice of appeal."

**Chain of Custody for Seized Substances (Points I, II, and III)**

In his first three points, Sales challenges the sufficiency of the evidence for his drug trafficking, drug possession, and evidence tampering convictions on the grounds that the substances tested and determined to be methamphetamine at the laboratory were not shown to be the same substances seized from his pocket or the apartment drainpipe. He does not challenge the admissibility of testimony and reports regarding the laboratory procedures or results of the laboratory tests showing the substances were methamphetamine and their pure weights.

The distinctions between admissibility, sufficiency, and weight of the evidence are crucial to resolution of Sales' claims. Chain of custody testimony and evidence is foundational for *admission* of other evidence, in this case the testimony and conclusions of the forensic chemists. A chain of custody objection typically is raised before the admission of evidence, and the claim on appeal is erroneous admission of testimony or evidence over the defense's objection. *See, e.g., State v. Bowman*, 337 S.W.3d 679, 689 (Mo. banc 2011); *State v. Sammons*, 93 S.W.3d 808, 810 (Mo.App. E.D. 2002). Why? Once testimony or evidence has been admitted, "it may be relied upon for purposes of determining the submissibility of the case." *Matter of Mitchell*, 544 S.W.3d 250, 257 (Mo.App. S.D. 2017) (citation modified). At that point, weaknesses in an identification or a deficiency in the chain of custody raised during cross-examination may be considered by the jury in assessing the *weight* or probative value to give the admitted evidence or testimony. *Bowman*, 337 S.W.3d at 689; *State v. Gott*, 191

5

S.W.3d 113, 117 (Mo.App. S.D. 2006).

On appeal, we are required to view the evidence and testimony in the light most favorable to the verdicts and, subject to an exception not applicable here, we disregard contrary evidence and inferences. *Bowman*, 337 S.W.3d at 688. Viewing the evidence as we must, there was sufficient evidence for a reasonable juror to find Sales guilty beyond a reasonable doubt. *See Id*. Police officers testified that they seized plastic bags containing a white substance, field tested to be methamphetamine, from Sales' pocket and within a black sock found in the apartment sewage line. The protocol the forensic chemists followed was to verify first that the case numbers, file numbers, and description of the evidence matched before beginning their analyses. One of the forensic chemists described the evidence she received as a plastic container with a black sock, bags, and water. They testified that the evidence was securely stored while in their custody and that forensic testing determined the substances were indeed methamphetamine. All of this testimony and evidence was admitted without any chain of custody objection, and a reasonable juror, relying on this testimony, could determine that the State had proven beyond a reasonable doubt that the substances in the plastic bags, seized during the execution of the search warrant, were methamphetamine.

The discrepancies Sales highlights now on appeal, *e.g.,* the substance in the bags in the sock was observed to be crystalline by the police but the substance tested in the lab was in liquid form, go to the admissibility or weight of the testimony and evidence, not its sufficiency. We must not indulge Sales' improper attempt to have us review unpreserved issues relating to admissibility or weight of the evidence under the guise of a sufficiency-of-the-evidence challenge. Points I, II, and III are denied.

**Paraphernalia Evidence (Points IV and V)**

Sales next claims that the evidence was insufficient to establish that the digital scale found with his identification and the burned glass pipe found in his pocket were used in conjunction with a controlled substance because field testing of the residue on those objects cannot determine beyond a reasonable doubt that the residue was methamphetamine.

The State's burden was not to prove beyond a reasonable doubt that the residue on the drug paraphernalia was methamphetamine. The State was required to show "(1) conscious and intentional possession of the … paraphernalia, either actual or constructive, and (2) awareness of the presence and nature of the … paraphernalia." *State v. Welch*, 603 S.W.3d 745, 748 (Mo.App. S.D. 2020) (citation modified). *See* § 579.074 RSMo. (2016, effective Jan. 1, 2017). These elements may be proven by circumstantial evidence. *Id.*

The glass pipe was found in Sales' pocket, in his actual possession. Sales had constructive possession of the digital scale based on his presence in the apartment when the search warrant was executed, his admission that he had been staying there for about a week, and the commingling of his identification in the same bag with the digital scale. *See State v. Foulks*, 72 S.W.3d 322, 326 (Mo.App. S.D. 2002).

From the surrounding circumstances, the jury reasonably could infer that Sales was aware the scale and glass pipe were drug paraphernalia. Methamphetamine was found in Sales' actual possession and more methamphetamine was seized from the apartment's sewage line. Used syringes, more than one digital scale, and more than one burned glass pipe were seized from the apartment during the execution of the search warrant. The jury was entitled to believe the testimony and evidence that digital scales are used to weigh methamphetamine for sale and that glass pipes and syringes are used to ingest methamphetamine. The jury also could consider

Sales' post-Miranda interview, during which he showed an advanced knowledge of different methamphetamine varieties, how they are produced, and their effects on the human body. We deny Points IV and V.

**No Denial of Right to Counsel (Point VI)**

In his sixth point relied on, Sales asserts he was denied his constitutional right to be represented by counsel. Nothing in the record shows the court ever denied Sales counsel when requested. To the contrary, the court, on multiple occasions, scrupulously examined Sales about invocation of his right to represent himself and confirmed his waiver, or continued waiver, of his right to counsel. Sales argues that the court delayed approval of his post-trial motion for counsel, which had the effect of denial of counsel.

The Sixth Amendment to the U.S. Constitution affords the accused the right to have the assistance of counsel *and* the right to make one's own defense. *State v. Teter*, 665 S.W.3d 306, 313 (Mo. banc 2023). The Constitution does not provide a right to hybrid representation, *i.e.*, a combination of self-representation and assistance of counsel. *State v. Barnett*, 696 S.W.3d 421, 428 (Mo.App. E.D. 2024). A defendant is not permitted to play a "cat and mouse" game with appointment or retention of counsel. *State v. Thompson*, 711 S.W.3d 339, 346 (Mo. banc 2025) (citation modified).

After considering the content of Sales' motion and the context of the case, we cannot agree that the passage of time between the filing of his motion and the order for appointment of counsel denied Sales the assistance of counsel he actually desired and sought. Unlike *State v. Dailey*, 21 S.W.3d 113 (Mo. App. W.D. 2000), on which Sales relies, Sales' motion was not filed until 15 of the 25 days to file a new trial motion had passed, he made no mention of a new trial motion or the urgency of the need for appointment of counsel to assist in the preparation and

8

filing of a new trial motion, and his motion was granted, not denied. In both its title and content, the motion pairs appointment of counsel with the issue of release on bond pending an appeal. The deadline for filing an appeal had not yet begun to run at the time the motion was filed, and the court approved appointment of counsel well within the time to file a notice of appeal. We would not fault the trial court for understanding Sales' motion as one for appointment of counsel for appellate proceedings rather than a plea for urgent assistance in filing a new trial motion, as was the case in *Dailey*.

Events that transpired after the filing of his motion for appointment of counsel lend further support to Sales' motivations and intentions in filing the motion for appointment of counsel. As set forth in our review of the facts of this case, Sales discharged counsel appointed to represent him post-trial and disavowed the new trial motion filed by counsel. His concerns were the return of property seized as evidence, the preservation of evidence, and his release from custody on bond; not the motion for new trial or allegations therein. With light editing, what was said in *Barnett* applies equally here: "[Sales] only wanted to be represented by appointed counsel if counsel did exactly what he wanted. After discovering that appointed counsel would not blindly follow his orders, [Sales] sought to represent himself again and these instances show that [Sales] wished to proceed pro se unequivocally." 696 S.W.3d at 430.[4]

The lack of defense counsel in this case is no failure of the court; it is the result of Sales' knowing, voluntary, and repeated waiver of counsel and the exercise of his right to represent himself. At no point has Sales been denied the assistance of counsel he wanted and sought. We deny Point VI.

---

[4] This pattern has continued into the appeal. Before his appellate counsel could file the record or initial brief, Sales filed a pro se "Motion to Reinstate Bond," which we denied.

**Probable Cause for Search Warrant (Point VII)**

In his final point, Sales claims the trial court erred in admitting testimony and exhibits resulting from the search of the apartment because the warrant granting authority for the search was not supported by probable cause. "For an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial and presented to the circuit court in a motion for new trial." *State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022) (citation modified). Sales objected repeatedly and vigorously, but he did not include his objection in a timely motion for new trial, so this claim has not been preserved for appellate review. He requests plain error review.

A warrant may be supported by the showing of "a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The presence of such contraband or evidence need not be established … by a preponderance of the evidence or beyond a reasonable doubt." *Id.* The reviewing court gives great deference to the determination of probable cause that was made at the time the warrant was issued. *Id.* "The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for determining that probable cause for the search did exist." *Id.* This presents a high burden on appeal even when the issue has been preserved for review, yet Sales' burden is even greater. We will decline plain error review "unless the claimed error facially establishes substantial grounds for believing that a manifest injustice or miscarriage of justice has resulted." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (citation modified).

Sales' argument rests on the proposition that the informants cited in the warrant application were not shown to be credible or corroborated by other sources. The informants'

credibility or reliability was not alleged in the warrant application. However, there is no need to demonstrate reliability of an informant based on prior dealings if the information provided is specific, learned through personal observation, and has been corroborated through other sources. *State v. Fowler*, 467 S.W.3d 352, 357-60 (Mo.App. W.D. 2015). In this case, the warrant affidavit shows the informants' information was based on personal observation (either explicit or implicit), fresh, detailed, and, to the extent possible, corroborated by police investigation and surveillance. *See Neher*, 213 S.W.3d at 49-51.

Sales has not demonstrated substantial grounds for believing that a manifest injustice or miscarriage of justice has occurred in the admission of testimony and exhibits resulting from the search of the apartment. We decline plain error review of Point VII and affirm the judgment and convictions.

JACK A. L. GOODMAN – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

BECKY J. WEST, J. – CONCURS